**MATTHEW RIGHETTI, ESQ.**    {CSB# 121012}
matt@righettilaw.com
**JOHN GLUGOSKI, ESQ.**    {CSB# 191551}
jglugoski@righettilaw.com
**MICHAEL RIGHETTI, ESQ.**    {CSB #258541}
mike@righettilaw.com
**RIGHETTI GLUGOSKI, P.C.**
456 Montgomery Street, Suite 1400
San Francisco, CA  94104
Telephone:    (415) 983-0900
Facsimile:    (415) 397-9005


**JASON M. KRUMBEIN, ESQ**    {VSB# 43538}
**KRUMBEIN CONSUMER LEGAL SERVICES, INC**
1650 Willow Lawn Drive, Suite 300
Richmond, VA 23230
Telephone:    (804) 673-4358
Facsimile:    (804) 673-4350


Attorneys for Appellants Card,
Hernandez, Gentry and Skaf, et al.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE EASTERN DISTRICT OF VIRGINIA

## RICHMOND DIVISION

| | |
|---|---|
| Gentry et al.,<br><br>          Appellants<br><br>          v.<br><br>Circuit City Store, Inc., *et al.*,<br><br>          Appellees | Case No. 3:10-cv-00567-HEH<br><br>**APPELLANTS' OPENING BRIEF REGARDING APPEAL  FROM BANKRUPTCY COURT'S ORDER DENYING APPELLANTS' MOTION TO APPLY RULE 7023 TO THEIR CLASS PROOFS OF CLAIM**<br><br>Date:  TBD<br>Time:  TBD<br> Hon. Henry E. Hudson |

**TABLE OF CONTENTS**

Page

I.     BASIS FOR APPELLATE JURISDICTION.................................................................1

II.    STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW...................1

       A.     Statement of Issues Presented.................................................................1

       B.     Standard of Review...................................................................................1

III.   STATEMENT OF THE CASE........................................................................................2

       A.     Statement of Facts.....................................................................................3

              1.     The Chapter 11 Bankruptcy Cases In the Eastern District of Virginia........3

              2.     The Class Action Complaints, Class Proofs of Claims and Appellees'
                     Omnibus Objections Thereto.................................................................5

              3.     Appellants' Request For Discovery Pursuant to Federal Rule of Civil
                     Procedure Rule 56...................................................................................9

                     a.     The Rule 56 Motion and Appellees' Supplement to
                            Objections.......................................................................11

                     b.     The Bankruptcy Court's Order Re. Appellees' Motions for
                            Summary Judgment and Supplement to Objections
                            Nineteen and Thirty-one...................................................12

              4.     Appellants' Motion to Apply Bankruptcy Rule 7023 to Creditors' Class
                     Proofs of Claim.......................................................................................12

IV.    SUMMARY OF ARGUMENT.......................................................................................14

       A.     Authorized Agent to File a Class Proof of Claim...................................15

       B.     Appellants Timely Brought Their 7023 Motion Following Appellees' Supplement
              to Objections Nineteen and Thirty-one...................................................16

       C.     The Notice Procedure Used to Inform Appellants' Putative Class Members
              Violates Their Due Process Rights...........................................................17

D.      Class Action is the *ONLY* Manner in which to Vindicate the Rights of the Unnamed Claimants in these Cases, thus Making it Superior to the Bankruptcy Claims Administration Process...........................................................................18

**V.**   ARGUMENT.............................................................................................................19

A.      Appellants are Authorized to File Class Proofs of Claims.....................................19

1.      The Bankruptcy Court erred by finding that Appellants are not "authorized agents." ....................................................................................................21

2.      The cases cited by the Bankruptcy Court on this issue are innaposite......22

3.      Appellants Unfair Competition Law claims deputize them to serve as representatives of the general public.............................................................24

B.      Appellants Timely Brought Their 7023 Motion Following Appellees' Supplement to Objections Nineteen and Thirty-One.............................................................25

1.      Appellants promptly moved the Bankruptcy Court to apply Rule 7023 to their class proofs of claim after receiving Appellees' Supplement to Objections.....................................................................................................27

2.      No authority supports the Bankruptcy Court's proposition that Appellants' motion had to be brought before the Bar Date.............................................28

C.      The Bankruptcy Court Erred in Finding that these Cases were not Suitable for Certification Without Holding an Evidentiary Hearing.............................................29

1.      Ignoring its own instructions, the Bankruptcy Court then made factual findings that are not supported by the Record.............................................31

D.      The Notice Procedure Used to Inform Putative Class Members did not Comport with Due Process or Rule 23.............................................................................33

1.      The putative class claimants herein are entitled to Rule 23 Notice – and the generic bankruptcy is not superior to Rule 23 Notice.....................35

a.      The Bankruptcy Court denied putative class members due process.............................................................................................35

b.      The Bankruptcy Court effectively transformed these "opt-out" class actions into "opt-in" class actions........................................37

2.      The putative class members in Appellants' putative class action complaints are known creditors.............................................................38

3.    There is no evidence in the record supporting the Bankruptcy Court's conclusion that providing actual notice to unnamed claimants would have "involved significant time and expense."…....…………………………...…40

**VI.    RELIEF SOUGHT**……………………………………………………………………….44

# TABLE OF AUTHORITIES

## <u>FEDERAL CASES</u>

*<u>California Offset Printers, Inc. v. Hampton Intern. Communications, Inc.</u>*,

   95 F.2d 1156 (C.A.9 (Cal.) 1996)...................................................................31,41

*<u>In Re Charter Co.</u>*,

   876 F.2d 866 (C.A. 11 (Fla) 1989)............................................................25, 26,28

*<u>In Re Computer Learning Center</u>*

   344 B. R. 79 (Bankr. E.D. Va. 2006)........................................................1,29,36

*<u>In Re Ephedra Prods. Liab. Litig.</u>*,

   329 B.R. 1 (S.D.N.Y 2005)............................................................................32,33

*<u>In re Kielisch</u>*,

   258 F.3d 315 (C.A.4 (Va) 2001)...........................................................................1

*<u>In re J.A. Jones, Inc.</u>*,

   492 F.3d 242 (C.A.4 (N.C.) 2007)....................................................................33,34

*<u>Mullane v. Central Hanover Bank & Trust Co.</u>*,

   339 U.S. 306 (1950).........................................................................................33

*<u>In re Litton</u>*,

    330 F.3d 636 (C.A.4 (Va) 2003).........................................................................2

*<u>In Re Manville Forest Products Corp.</u>*,

   89 B.R. 358 (Bankr. S.D.N.Y 1988).....................................................................23

*<u>In Re North Bay General Hospital, Inc.</u>*,

   404 B.R. 443 (Bankr. S.D. Tex. 2009).................................................................23

*<u>In re Nissan Motor Corp. Antitrust Litigation</u>*,

   552 F.2d 1088 (5th Cir. 1977)...........................................................................35

*<u>Matter of American Reserve Corp.</u>*

   840 F.2d 487 (C.A. 7 (Ill.), 1988)...........................................15,19,20,21,22,28

*Mennonite Bd. of Missions v. Adams*,

    462 U.S. 791 (1983)..............................................................38

*Reid v. White Motor Corp.*

    886 F.2d 1462 (C.A. 6 (Ohio) 1989)........................................28

*Tulsa Professional Collection Service, Inc. v. Pope*,

    485 U.S.478 (1988)..............................................................38


**STATE CASES**

*Cortez v. Purolator Air Filtration Products Co.*

    23 Cal.4th 163, (2000)..........................................................24

*Gentry v. Superior Court*

    (2007) 42 Cal.4th 443...........................................................5,39

*Saunders v. Superior Court*,

    27 Cal.App.4th 832 (Cal.App. 2 Dist.,1994)............................24

*Savon Drug Stores, Inc. v. Superior Court*,

    34 Cal.4th 319 (2004)..........................................................40

**FEDERAL STATUTES**

28 U.S.C. §157...........................................................................1

28 U.S.C. §158...........................................................................1

11 U.S.C. § 501.....................................................................15, 20

11 U.S.C. § 502.........................................................................26

Federal Rule of Bankruptcy Procedure 3001...............................15

Federal Rule of Bankruptcy Procedure 3002...............................15

Federal Rule of Bankruptcy Procedure 7023...........................1,20

Federal Rule of Bankruptcy Procedure 8013................................1

Federal Rule of Bankruptcy Procedure 9014...................................................................1,20

Federal Rule of Civil Procedure 23...................................................................20

Federal Rule of Civil Procedure 52(a)...................................................................31,40

**STATE STATUTES**

Cal. Business and Professions Code § 17200 et seq...................................................................24

**SECONDARY AUTHORITIES**

*Federal Judicial Center*, <u>Illustrative Forms of Class Action Notices</u>, www.fjc.gov/, Class Action
      Notices Page...................................................................34,35

*Newberg on Class Actions*, Conte, Alba and Newberg, Herbert, Fourth Edition, Ch. 8, §31,
      <u>Content of Rule 23(c)(2) Notice</u>...................................................................35

I.      **BASIS FOR APPELLATE JURISDICTION**

This Court has jurisdiction pursuant to 28 U.S.C. §157 and 28 U.S.C. §158. *C.f. In Re Computer Learning Center*, 344 B.R. 79 (Bankr. E.D. Va. 2006)

II.     **STATEMENT OF ISSUES PRESENTED AND STANDARD OF REVIEW**

A.      **STATEMENT OF ISSUES PRESENTED**

1.      Whether the Bankruptcy Court erred in holding that the Appellants Robert Gentry, Joseph Skaf, Jack Hernandez and Jonathan Card ("Appellants") were not "authorized agents of the unnamed class claimants, and thus were not entitled to file class proofs of claim on behalf of unnamed claimants in the first instance."

2.      Whether the Bankruptcy Court erred in holding that the Appellants were required to file a motion pursuant to Federal Rule of Bankruptcy Procedure ("FRBP") Rule 9014 to apply FRBP Rule 7023 to their class proofs of claim *before* the expiration of the Bar Date for the Class Claims to be filed timely.

3.      Whether the Bankruptcy Court erred in finding that the case was not suitable for certification (i.e., a class action was not superior to bankruptcy claims process) (a) without a class certification evidentiary hearing, and (b) due to the court's conclusion that a generic bankruptcy notice process was superior to the Rule 23 notice process.

B.      **STANDARD OF REVIEW**

A bankruptcy court's findings of fact are reviewed for clear error, and conclusions of law are reviewed *de novo*. *See* Rule 8013, Fed. R. Bankr.P.; *In re Kielisch*, 258 F.3d 315, 319 (4th Cir.2001). Mixed questions of law and fact are also reviewed *de novo*. *See*

*In re Litton,* 330 F.3d 636 (C.A.4 (Va) 2003). As the matters appealed from did not emanate from an evidentiary hearing, per the Bankruptcy Court's own conclusion, all issues on appeal should be reviewed *de novo.*

## III.   STATEMENT OF THE CASE

Appellants Gentry, Card, Skaf and Hernandez (hereafter "Appellants") each represent four distinct classes of former employees of Debtors (hereafter "Appellees") in putative class actions filed in the State of California.   While the Skaf, Card, and Hernandez Complaints were filed in 2008, the Gentry Complaint was filed in 2002, and was vigorously litigated prior to Appellees' bankruptcy petition.   Prosecution of the respective State Court actions was automatically stayed pending this liquidating bankruptcy proceeding.   Appellants allege that Appellees orchestrated a campaign designed to cheat employees out of their hard earned wages by routinely misclassifying a host of customer service positions as "exempt" from California's strict wage and hour overtime requirements as more fully described below.

After Appellees filed their bankruptcy petitions, Appellants timely filed class proofs of claims in January, 2009 on behalf of themselves and all similarly situated unnamed claimants.[1]   Appellees did not object to the proofs of claims on the grounds that they were filed as class proofs of claims until over one year later on February 25 and 26, 2010 (Appellees' Supplement to Nineteenth and Thirty-first Omnibus Objection), well after the bar date had passed. See Exs. 6 and 13.

Following a hearing before the Bankruptcy Court on March 25, 2010, the Court sustained Appellees' Supplement to Nineteenth and Thirty-first Omnibus Objections on

---

[1]      Pursuant to the Bar Date Order, the bar date for filing proofs of claim for claims arising before November 10, 2008 against Appellees was January 30, 2009.

the grounds that Appellants had not made Federal Rule of Bankruptcy Procedure Rule

7023 applicable to their proofs of claim. However, the court granted Appellants leave to

file a motion to apply Rule 7023 to their class proofs of claims. See Ex. 18

Appellants immediately filed their Omnibus Motion to Apply FRBP Rule 7023 to

their class proofs of claims. Appellees opposed the motion and the matter was heard by

the Bankruptcy Court on April 15, 2010. Following oral argument, the Bankruptcy Court

denied the motion and later submitted a written Order with a supporting Memorandum

Opinion, which is the subject of Appellants' appeal. See Exs. 25 and 26.

## A.   Statement of Facts

### 1.   The Chapter 11 Bankruptcy Cases In the Eastern District of Virginia.

The Appellees filed voluntary petitions in the United States Bankruptcy Court for

the Eastern District of Virginia on November 10, 2008. See Ex. 20, Appellees' Response

to Appellants' Motion to Apply Bankruptcy Rule 7023 to Their Class Proofs of Claim,

pg. 2. Kurtzman Carson Consultants LLC ("KCC") was appointed as agent for claims

and noticing procedures. On December 19, 2008 KCC mailed a generic notice of the

Claims Bar Date Notice to Appellees' employees for the three years prior to the Petition

Date.[2] See Ex. 21. The "notice" states:

> On December 11, 2008, the United States Bankruptcy Court for the
> Eastern District of Virginia, (the "Bankruptcy Court") entered an order
> (the "Bar Date Order") in the above captioned chapter 11 cases
> establishing **January 30, 2009 at 5:00 p.m. (Pacific Time)** as the general
> claims bar date (the "General Bar Date") in the chapter 11 cases of the
> above-captioned debtors and debtors in possession (collectively, the
> "Debtors"). Except as described below, the Bar Date Order requires all

---

[2]     The generic pro forma bankruptcy notice did not purport to advise employees about the allegations
of the lawsuits, or their employment rights under California law – and was not mailed to any employees
who were employed in California earlier than 3 years preceding the bankruptcy petition even though
Appellee had names and addresses of its employees.

APPELLANTS' OPENING BRIEF

Entities, as defined in section 101(15) of 11 U.S. C. §§ 101-1532 (the "Bankruptcy Code"), including persons, estates, trusts, and the United States trustee (but excluding governmental units), that have or assert any prepetition Claims (as defined herein) against any of the Debtors listed on page 4 below, to file a proof of claim so that such proof of claim is received on or before 5:00 p.m., Pacific Time, on the General Bar Date at the following address if delivered by mail, hand delivery or overnight courier.

The notice also provides a "Definition of Claim:"

For purposes of the Bar Date Notice, "Claim" shall mean, as to or against any of the Debtors listed on page 4 below: (1) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (2) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

*Id.*, pg. 2. The notice contains a total of seven pages of legalese, but nowhere does it explain to any of the putative class herein what their rights may or not be with respect to the class allegations contained in the four respective class proofs of claim. Appellees contend this "notice" was sufficient to satisfy due process as to those individuals who were employed with three years of the Petition Date.

Appellees also published notice of the claims bar date in the <u>Richmond Times-Dispatch</u> (Ex. 22) and the <u>Wall Street Journal</u> (See Exhibits 23). Neither publication, however, was calculated to reach the former California employees because none would have had access to the obscure Richmond Times-Dispatch and few of whom would have fallen into the targeted clientele for the Wall Street Journal. Moreover, even if the publication had been targeted to reach the former California employees, the actual publications themselves are enough to make the most sophisticated attorney's head spin.

Exhibits 22 and 23 represent the true versions of the publications as they appeared in the newspapers.

### 2.     The Class Action Complaints, Class Proofs of Claims and Appellees' Omnibus Objections Thereto.

The four proposed class actions and Appellees' omnibus objections to Appellants claims are summarized below.   Generally, each of the four class action complaints include allegations that Appellees violated both California wage and hour statutes and California Business & Professions Code section 17200 et. seq. (Unfair Business Practices).

*Gentry v. Circuit City, Inc. and Hernandez v. Circuit City, Inc.*

*Gentry v. Circuit City, Inc.*: originally filed on August 29, 2002 in the Los Angeles Superior Court, Case No. BC 280631. The case covers all California based salaried customer service managers who worked overtime for Appellees and were not paid overtime wages from within the four years preceding the filing of the complaint and up to the time defendants eliminated the position in approximately March, 2001.   Mr. Gentry held the position of customer service manager for Circuit City during the class period. The case alleges, inter alia, that Plaintiff and other customer service managers were required to work overtime and were not paid required overtime pay.   A true and correct copy of the *Gentry* Complaint is attached to the Declaration of Michael Righetti as Exhibit 1.[3]

This case was litigated for several years in the California courts as Circuit City sought to enforce an arbitration agreement that included a ban on class actions.   The enforceability of the ban on class actions was litigated heavily and resulted in a landmark

---

[3]       Unless otherwise indicated, any and all references to Exhibits throughout this brief shall be attached to the Declaration of Michael Righetti.

decision from the California Supreme Court (*Gentry v. Superior Court* (2007) 42 Cal.4[th] 443). Notwithstanding the *Gentry* Supreme Court decision, Appellees continued its attempts to enforce the ban on class actions. When the trial courts in all the pending cases rejected Appellees' machinations then Appellees appealed those orders as well. Appellees were appealing two trial court orders in *Gentry* (California Second District Court of Appeals) and *Hernandez* (California Fourth District Court of Appeals) denying its petition to compel arbitration at the time they filed bankruptcy.

*Hernandez v. Circuit City, Inc.*: originally filed on April 17, 2008 in the San Diego Superior Court, Case No. 37-2008-00082173-CU-OE-CTL. The case covers all California based salaried store managers who worked at any time during the four years preceding the filing of the Complaint up to the date Appellees stopped doing business in California at any of Appellees' retail locations in the State of California. Mr. Hernandez held the position of Sales Manager during the class period. Similar to the Gentry case, the Hernandez case alleges, inter alia, that Plaintiff and other store managers were required to work overtime and were not paid required overtime pay. A true and correct copy of the *Hernandez* Complaint is attached as Exhibit 2.

On January 13, 2009, Appellants Robert Gentry's and Jack Hernandez's priority class proofs of claim were timely filed -- Claim #6039 and #6045 respectively. See Exhibit 3. On June 26, 2009, *nearly six months after receiving Gentry's and Hernandez's class proofs of claim*, Righetti Law Firm received Appellees' Nineteenth Omnibus Objection, which was signed by Appellees' counsel on June 22, 2009. See Exhibit 4. Appellees' Nineteenth Omnibus Objection merely sought to reclassify Gentry's and Hernandez's claims to general unsecured, non-priority claims. *Id.*

Importantly, Appellees did not object on the grounds that the claim was submitted on behalf of unnamed claimants, nor did Appellees contest liability or otherwise object as to the Gentry and Hernandez class proofs of claims. Appellants Gentry and Hernandez responded to Appellees' objection on the grounds that they were void of any facts and/or argument. (Exhibit 5).

On February 25, 2010, Appellees filed a Supplement to the Nineteenth Omnibus Objection in which Appellees, *for the first time since receiving Appellants Gentry's and Hernandez's class proofs of claim over 13 months prior*, sought to disallow Appellants Gentry's and Hernandez's class proofs of claim. Exhibit 6. Appellees filed this Supplement to Objection simultaneously with a Motion for Summary Judgment seeking to reclassify Gentry's and Hernandez's claims to general, unsecured claims. Ex. 7.

### *Card v. Circuit City, Inc. and Skaf, et al. v. Circuit City, Inc.*

*Card v. Circuit City, Inc.*: originally filed on November 3, 2008 in the San Diego Superior Court, Case No. 37-2008-00095260-CU-OE-CTL. The case covers all California based salaried store assistant managers who worked at any time during the four years preceding the filing of the Complaint up until the date Appellees stopped doing business in California at any of Appellees' retail locations in the State of California. Mr. Card held the position of Assistant Manager during the class period. The case alleges, inter alia, that Plaintiff and other assistant managers were required to work overtime and were not paid required overtime pay. The *Card* Complaint is attached as Exhibit 8 to the Righetti Decl.

*Skaf, et al. v. Circuit City, Inc.*: originally filed on December 19, 2008 in the Los Angeles Superior Court, Case No. BC 404195. The case was filed on behalf of Joseph

Skaf, Miguel Perez, and Gustavo Garcia and all others similarly situated as California-based salaried "Entertainment Managers," "Technology Managers," "Service & Installation Managers," "Sales Managers," and "Operations Managers" who worked at any time during the four years preceding the filing of the complaint up to the date Appellees stopped doing business in California at any of the Appellees' stores in the State of California. Plaintiffs held the positions defined in the class during the class period. The case alleges, inter alia, that Plaintiff and other class members were required to work overtime and were not paid required overtime pay. The *Skaf* Complaint is attached as Ex. 9 to Decl. of Michael Righetti.

On January 13, 2009, Appellant Card's priority, class proof of claim was filed, and on January 30, 2009, Appellant Joseph Skaf, Miguel Perez, and Gustavo Garcia filed their secured, priority class proof of claim. See Exhibit 10.

On August 20, 2010, *nearly nine months after receiving Card's and Skaf's class proofs of claims*, Appellees submitted their Thirty-first Omnibus Objection, which sought to disallow the claims of Card and Skaf on the grounds that the claims "arise from pending litigation, prospective litigation, or other threatened litigation claims" and "the Appellees dispute any liability for the alleged Legal Claims." (See Appellees' Thirty-first Omnibus Objection to Claims, Para. 11-12, Exhibit 11. Appellants filed responses to these objections asserting that they were void of any facts and/or argument. Exhibit 12. Importantly, however, Appellees did not object to the class proofs of claim on the grounds that Card and Skaf had filed them as class claims on behalf of similarly situated employees.

Similar to what occurred with respect to the Gentry and Hernandez class proofs of claim, Appellees filed Supplements to Thirty-first Omnibus Objections on February 26, 2010. In the Supplements, *for the first time since receiving Appellants Card's and Skaf's class proofs of claim over 13 months prior*, Appellees sought to disallow the claims of similarly situated class members on whose behalf the class proofs of claim were filed. See Exhibit 13. Appellees filed this Supplement to Objection simultaneously with a Motion for Summary Judgment seeking to reclassify Card's and Skaf's claims to general, unsecured claims. Ex. 14.

### 3. Appellants' Request For Discovery Pursuant to Federal Rule of Civil Procedure Rule 56.

Appellees' Motions for Summary Judgment and Appellees' Supplement to Objections Nineteen and Thirty-one sought two different types of relief. The supplement to objections asserted that the class proofs of claim should be disallowed in their entirety because Appellants did not receive authority from the Bankruptcy Court to file "class" proofs of claims pursuant to Federal Rule of Bankruptcy Procedure 7023. Exs. 6 and 13. This, despite the clear fact that Rule 7023 imposes no such requirement at all. The Motion for Summary Judgment on the other hand, merely sought to reclassify the "class" claim from a priority claim to a general, unsecured claim. See Exs. 7 and 14.

In response to Appellees' Supplement to Objections Nineteen and Thirty-one and accompanying Motions for Summary Judgments, Appellants filed Omnibus Response and Opposition to Appellees' Motions for Summary Judgment and Appellants' Application for Rule 56(f) Discovery. See Ex. 15. Therein, Appellants demonstrated that due to Appellees' bankruptcy petition each of their State Court cases had been stayed, which prevented Appellants from conducting any discovery whatsoever. See Ex. 16,

Decl. of Matthew Righetti in Support of Appellants' Rule 56 Motion, para. 7. Furthermore, Appellants pointed out that Appellees had yet to respond to any of the allegations whatsoever in any of the class action complaints. *Id.* Thus, Appellants had no way of responding to Appellees' Motions for Summary Judgment or Supplement to Objections.

Soon after the bankruptcy petition was filed – and well prior to receiving Appellees' Motions for Summary for Judgment and Supplement to Objections -- class counsel for Appellants, Matthew Righetti, repeatedly contacted Appellees' counsel at Skadden Arps to discuss these claims. *Id.* Para. 8. Mr. Righetti asked if Appellees would stipulate to relief from the automatic stay so these claims could be litigated in State court (with the proviso that the parties would then return to the Bankruptcy Court so any resulting judgment could be handled in the Eastern District of Virginia in the context of the bankruptcy proceedings). *Id.*

Appellees' counsel informed Mr. Righetti that they would not consider relief from the automatic stay to either litigate the claims in State court or in bankruptcy. *Id.* In addition, due to the fact that this is a *liquidating* Chapter 11 case, the Bankruptcy Court repeatedly advised Appellees and Appellants' counsel that it disfavored motions requesting relief from stay to litigate in State court, as it was perceived as more costly and could lead to higher defense fees thereby further draining Appellees' already depleted asset base through expenditure of funds on litigation matters. Clearly, the Bankruptcy Court wanted all matters to stay in Virginia and remain subject to the automatic stay, a fact which the Bankruptcy Court itself confirmed at the March 25, 2010

hearing. Ex. 17, pg. 75: 13-21 (Court confirms that it would have denied lifting the automatic stay to conduct discovery in these matters).

> **a.     The Rule 56 Motion and Appellees' Supplement to Objections**

As previously noted, Appellees' Supplement to Objections Nineteen and Thirty-one sought to disallow Appellants' class proofs of claims in their entirety. Appellees argued that Appellants had not been authorized by the Court to file class proofs of claim pursuant to Federal Rule of Bankruptcy Procedure 7023. See Ex. 6 and Ex. 13.

In response, Appellants filed the Rule 56 motion mentioned above. See Ex. 15. Appellants demonstrated that they could not meet their evidentiary burden to reasonably respond to Appellees' Supplement to Objections Nineteen and Thirty-one without conducting *at least some* discovery pertaining to FRCP Rule 23. At the hearing, however, the Bankruptcy Court made clear its view that a Rule 7023 motion is not an evidentiary motion with respect to proving any of the elements of Rule 23. The Court specifically stated:

> THE COURT: Only to the extent that -- will it aid the Court in administering the case? That's what a Bankruptcy Court is going to be concerned about. Or is it going to interfere with the administration of the bankruptcy estate? That's what the 7023 motion is about. And that's why you do it on a threshold basis. And, yes, you can say these are the factors we're going to have to prove for class certifications, but you don't have to put on evidence, or prove any of that at that point in time. You can make those allegations, say this is what it is, this is what we're going to have to show, this is what we think we can show, and then the Court can decide whether it makes sense from a case administration standpoint to proceed in that fashion.

> MR. RIGHETTI: Okay. Well, so then, Your Honor, will the Court hear a 7023 motion at this time?

> THE COURT: Once it's filed I certainly will.

> MR. RIGHETTI: Okay. Well then, Your Honor, we will bring it.

Ex. 17, pg. 88:18-89:10.

**b.   The Bankruptcy Court's Order Re. Appellees Motions for Summary Judgment and Supplement to Objections Nineteen and Thirty-one.**

Soon after the hearing, the Bankruptcy Court issued an order granting Appellees' Motions for Summary Judgment as to the reclassification of Appellants' claims to general, unsecured claims. See Ex. 18 – Respective Court Orders granting Appellees' Motions for Summary Judgment. Thus, Appellants class claims were reclassified from priority claims to unsecured, general claims. The Court's Order, however, was without prejudice to seek Rule 7023 relief. *Id.* at Para. 3 in each respective Order.

In light of the Bankruptcy Court's guidance at the March 25, 2010 hearing, (and with the understanding that Appellants need not make the evidentiary showing required by Rule 23) Appellants filed their omnibus motion to apply Rule 7023 to their respective class proofs of claims. See Ex. 19.

**4.   Appellants' Motion to Apply Bankruptcy Rule 7023 to Appellants' Class   Proofs of Claim.**

In their motion, Appellants argued that Bankruptcy Rule 7023 was applicable to their class proofs of claim because:

1) Appellants' request was timely, and Appellees' were not prejudiced by the filing of the class proofs of claims;

2) Appellees did not provide appropriate notice of the pending actions to unnamed claimants even though Appellees are statutorily required to maintain last known contact information for their employees;

3) Appellants' class action complaints allege common questions of law applicable to each of the four respective groups of former employee class members. And, under California's UCL (Bus. and Prof. Code § 17200, et seq.) Appellants are statutorily empowered with standing to seek relief on behalf of the alleged class without class certification under Rule 23;

4) Appellees should be equitably estopped from objecting to Appellants' request due to their unjustified delay in objecting to the Appellants' proofs of claims on the grounds that they were filed as class proofs of claims.

See Ex. 19.

Appellees opposed Appellants' motion. See Ex. 20, Appellees' Opposition to Appellants 7023 Motion. The Bankruptcy Court heard oral argument on April 15, 2010. Ex. 24 – Transcript of proceedings from April 15, 2010 hearing. At the hearing, the Bankruptcy Court appeared to be most concerned with the question of whether Appellants had the *authority* to file class proofs of claim on behalf of unnamed claimants pursuant to Section 501 of the Bankruptcy Code and Federal Rules of Bankruptcy Procedure Rule [3002].[4] *Id.* at 51: 14-20 and 52:17-24. The Court also made some inquiry into the form and manner of notice (and lack thereof) to putative class members, the benefits and costs of the class litigation, and whether – despite the mandate of Rule 7023 (and in disagreement with the requirements of the rule -- the bankruptcy forum is sufficient in and of itself to address class action-type issues. *Id.* at pgs.33:19-21; 44:20-46:5.

---

[4]    During the hearing, the Court and AppelleesAppellees' counsel mistakenly referred to Federal Rule of Bankruptcy Procedure Rule 2002 instead of Rule 3002 during parts of the hearing on AppellantsAppellants' Motion. The Court's order correctly refers to Bankruptcy Rule 3002 at pg. 64:17-21.

Following the hearing, the Bankruptcy Court denied Appellants' motion. The Court found that Appellants did not have authorization to file class proofs of claim on behalf of unnamed claimants. *Id.* at 64:23-25. The Court went on to "shore up" its ruling by finding that 1) class action litigation would be inferior to the claims resolution process afforded by the bankruptcy, 2) the class proofs of claim would unduly complicate the administration of the bankruptcy proceedings, and 3) the putative class members were *unknown* Appellants thereby making publication notice sufficient, and 4) the generic bar date notice that was issued to any known Appellants was superior to the notice contemplated by Rule 23 – all without reference to any factual record whatsoever. *Id.* at 65:15-66:7.

As a result, the class proofs of claim were disallowed as to any and all unnamed claimants, but the proofs of claim on behalf of the named Appellants (Gentry, Card, Skaf and Hernandez) were allowed. The Bankruptcy Court issued a Memorandum Opinion and Order on May 28, 2010. See Exs. 25 and 26.

## IV.   SUMMARY OF ARGUMENT

After an entire of decade of litigation in the trenches of California's State Courts – which includes a published decision from the California Supreme Court and numerous stops at the California Courts of Appeals – with the stroke of a pen – in what was supposed to be a non-evidentiary hearing -- the Bankruptcy Court extinguished the rights of thousands of formerly employed workers. For reasons which will be explained in great detail below, the Bankruptcy Court's Memorandum of Opinion does not apply the law, but rather *creates* law out of whole cloth (all in derogation of Rule 7023 which specifically authorizes bankruptcy courts to handle class action claims). Clearly hostile

to the concept that any bankruptcy court should be burdened with litigating class claims, the Bankruptcy Court manufactured a ban on class actions in bankruptcy proceedings. In its decision the Bankruptcy Court arrogated to itself the right to contradict the plain language of the Federal Rules of Civil and Bankruptcy Procedure and put the Bankruptcy Court of the Eastern District of Virginia directly at odds with other Circuit Courts of Appeal who have recognized the right to litigate class actions in bankruptcy.

A.    **Authorized Agent to File a Class Proof of Claim.**

The Bankruptcy Court erred for the following reasons. As noted above, the Bankruptcy Court found that Appellants were not "authorized" to file class proofs of claim on behalf of unnamed Appellants pursuant to Code of Bankruptcy 501 and FRBP Rule 3001(b) and 3002. In its analysis, the Bankruptcy Court cited *American Reserve* 840 F.2d 487 (7th Cir. 1988). Yet, *American Reserve* is analogous to the present case in holding that a putative class representative *is an authorized agent to file on behalf of similarly situated individuals* – even though a class had yet to be certified prior to filing the class proofs of claims. The Bankruptcy Court simply misapprehended *American Reserve* or misapplied the law to the present facts which are remarkably similar to *American Reserve*.

Moreover, a putative class representative is an "authorized agent" to file on behalf of unnamed class members because class representatives are authorized to prosecute claims through the Rule 23 certification process such as here. Additionally, all these cases include claims under California Business & Professions Code Section 17200, i.e. Unfair Business Practices and Unfair Competition Law. California's Unfair Competition Law specifically authorizes and empowers a single representative plaintiff to sue *and*

*recover restitution* on behalf of a group of absent individuals <u>without ever achieving a certified class</u>.

Finally, the Court's finding in this regard in unsupported by the statutes or case law cited by the Court's Memorandum Opinion and Order. None of the cases relied on by the Court involve class action claims in bankruptcy. To require a putative class representative to seek express authorization from every single unnamed putative class member absolutely contradicts the entire spirit and purpose of Rule 23 – class representation where joinder of individual claims is impractical.

**B.   Appellants Timely Brought Their 7023 Motion Following Appellees' Supplement to Objections Nineteen and Thirty-one.**

The Bankruptcy Court found that Appellants' Motion had to be brought, in the first instance, <u>before</u> the expiration of the bar date for the Class Claims to be failed timely. This constitutes error. The Bankruptcy Court is effectively re-writing the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. There is no specific time required for filing a 7023 Motion – it can be made "at any stage in a particular matter." The Bankruptcy Court's decision to impose a time deadline that is not required by statute is plain error.

Moreover, Appellees failed to object to the class proofs of claim on the grounds that they were filed as class claims until after the bar date. A cardinal rule of bankruptcy law is that class claims are deemed allowed until and unless there is an objection. Yet the Bankruptcy Court's ruling confounds that rule by judicially manufacturing a trap for practitioners thereby imposing deadlines and requirements that a) conflict with other circuits, and b) are found nowhere in the rules or statutes. This judicially created trap

for the unwary places the Eastern District of Viriginia in conflict with every other circuit that has considered these issues.

### C.   The Notice Procedure Used to Inform Appellants' Putative Class Members Violates Their Due Process Rights.

The Bankruptcy Court found that the Appellees' notice procedure was "reasonably calculated, under the circumstances, to apprise interested persons of the pendency of the bankruptcy case and of the Bar Date as required to satisfy due process." Ex. 25, pg. 16. Yet, it is undisputed that Appellants never provided any notice designed to pass muster under Rule 23! Appellees only provided the generic bankruptcy notice (Ex. 21), which is drowning in legalese, to a small cross-section of the class – i.e., only employees dating back three years from the petition date (even though the class claims date back far longer). The putative class member claimants include former employees of Defendant dating back four years from the date each class action complaint was filed (e.g. the Gentry Complaint was filed in 2002, so the statutory period dates back to 1998). Other than the generic bankruptcy notice (that provided no information to claimants about their rights or the existence of any of the pending class actions), Appellees merely published a summary notice of the bar date in fine print in the obscure Richmond Times-Dispatch and the Wall Street Journal. Incredibly, the Bankruptcy Court arbitrarily deemed that these rudimentary bankruptcy notices were superior to Rule 23 notices and would serve to bar class claims for all California class members, including any employee in California who worked **prior to** three years before the petition. A finding that the generic bankruptcy notice and bar date is sufficient to supplant Rule 23 class notice betrays the Bankruptcy Court's hostility to and/or unfamiliarity with class action procedure.

**D.    A Class Action is the *ONLY* Manner in which to Vindicate the Rights of the Unnamed Claimants in these Cases, thus Making it Superior to the Bankruptcy Claims Administration Process.**

Further emasculating the applicable rules allowing class actions in bankruptcy, the Bankruptcy Court also found that the claims resolution process in bankruptcy would be a more *effective* way to administrate any and all claims arising from Appellants' proofs of claim than a class action.  This finding completely defies all logic and ignores the mandates of class action procedure.  The "notice" provided was not given to all class members – and was woefully deficient when compared to Rule 23 class notice.  Moreover, the unnamed claimants were deemed to be "unknown creditors" based on Appellees baseless arguments that it did not know which former employees were effected by the class action complaints.  This argument was specious because the ascertainability of the classes is easily determined by the employer's records in these cases.   Yet, accepting this argument, the Bankruptcy Court found that publication notice (which was carried out through the obscure Richmond Dispatch and Wall Street Journal) comported with due process and was superior to Rule 23 procedure.  In actuality, the result was a notice process that did nothing to inform putative class members of their rights, the existence of any of these lawsuits, the right to be represented by the named plaintiffs, the right to opt-out, etc..  By finding the routine bankruptcy processes more superior than Rule 23, the Bankruptcy Court eradicated class actions *in toto*.  This attempt by the Bankruptcy Court to not only ignore legislative rules, but also to usurp legislative powers is startling and should not be countenanced.

//

## V.   ARGUMENT

**A.   Appellants are Authorized to File Class Proofs of Claims.**

In *Matter of American Reserve Corp.* the Seventh Circuit answered the very same question posed by the Bankruptcy Court at the April 15, 2010 hearing on Appellants' 7023 Motion, i.e. whether putative class representatives are authorized in the first instance to file class proofs of claim in bankruptcy prior to achieving class certification. The Seventh Circuit answered in the affirmative.   It specifically held that "a representative may file a proof of claim on behalf of a class of similarly-situated persons" prior to ever certifying a class. *Id.* at 493.

In *American Reserve*, the Huddlestons filed a class action in 1979 in state court contending that Reserve Insurance Co. had defrauded its policyholders by issuing policies between 1977 and 1979 against reserves it knew to be insufficient. *Id.* at 488.  Later that year, the Illinois Director of Insurance declared Reserve Insurance insolvent. *Id.*  In 1980, before the state court decided whether to certify the class, American Reserve Corp., a holding company for American Reserve Insurance, filed a bankruptcy petition, which automatically stayed the state court proceeding. *Id.* The Huddlestons then filed a proof of claim in American Reserve Corp.'s bankruptcy on behalf of themselves as well as all members of the class of people who purchased policies between 1977 and 1979. American Reserve's trustee contested the representative claim, maintaining that each policyholder had to file separately. *Id.* The district court agreed with Reserve and sustained its objection to the class proof of claim.

To answer the question on appeal, i.e. whether a putative class representative is authorized to file a proof of claim as representative of others similarly situated, the

Seventh Circuit engaged in a focused discussion of the Bankruptcy Code and the Federal

Rules of Bankruptcy Procedure.   Bankruptcy Rule 7023 provides: "Rule 23 of Federal

Rules of Civil Procedure applies in adversary proceedings." Bankruptcy Rule 9014,

which applies to "a contested matter in a case ... not otherwise governed by these rules"

states that "[t]he court may at any stage in a particular matter direct that one or more of

the other rules in Part VII shall apply." Rule 9014 thus dictates that bankruptcy judges are

to apply Rule 7023 -- and thereby Fed.R.Civ.P. 23, the class action rule -- to "any stage"

in contested matters. Filing a proof of claim is a "stage". *Matter of American Reserve*

*Corp.* 840 F.2d 487, 488 (C.A.7 (Ill.),1988). The Seventh Circuit explained:

> Filing a proof of claim is a "stage." All disputes in bankruptcy are either
> adversary proceedings or contested matters . . .  so Rule 23 may apply
> throughout a bankruptcy case at the bankruptcy judge's discretion. Rule 23
> provides for filing by a representative, not just prosecution by a
> representative of claims already pending. So the right to file a proof of
> claim on behalf of a class seems secure.

*Id.*

Following this discussion, the court focused on Bankruptcy Code Section 501,

which provides:

> (a) A creditor or an indenture trustee may file a proof of claim. An equity security
> holder may file a proof of interest.
> (b) If a creditor does not timely file a proof of such creditor's claim, an entity that
> is liable to such creditor with the debtor, or that has secured such creditor, may
> file a proof of such claim.
> (c) If a creditor does not timely file a proof of such creditor's claim, the debtor or
> the trustee may file a proof of such claim.

This statute, the court noted, provides for some filings by "representatives," i.e. an

indenture trustee, a bankrupt's co-creditor, and a bankrupt on behalf of a creditor, but it

does not authorize one creditor to file a proof of claim on behalf of another. *American*

*Reserve* at 492. Nevertheless, the court found that "neither the legislative history nor the structure of the 1978 Code suggests that the list in § 501 is exclusive. *Id.*

Indeed, a finding that § 501 does not authorize a representative to file a claim on behalf of another *contradicts* the express language of other statutes, namely, FRBP § 3001(b): a proof of claim shall be executed by the creditor or the creditor's authorized agent." *Id.* at 493. "Authorized agents" are not listed in § 501, thus FRBP 3001(b) would be rendered meaningless if § 501 is treated as an exclusive list of those who have authority to file proofs of claims. *Id.*

Another statute that would be rendered meaningless, the Seventh Circuit highlighted, would be Rule 7023 itself. *Id.* The court stated:

> A Rule 23 class action is not simply a device by which one plaintiff prosecutes the case after many have filed separate suits (or intervened in a pending suit); it is a device by which the representative is an agent for persons who have not appeared or given even tacit consent. See Diane Wood Hutchinson, *Class Actions: Joinder or Representational Device?,* 1983 Sup.Ct.Rev. 459, 497-507. If § 501 prevents the class representative from prosecuting the claim on behalf of anyone who failed to file a proof-of-claim form (the equivalent of intervening in the pending bankruptcy case), then there will never be a *Rule 23* class action; there will only be a "spurious class action"; yet Bankruptcy Rule 7023 says that there are to be Rule 23 class actions in bankruptcy.

*Id.* It follows, therefore, that filing by representatives is permitted by Bankruptcy Code § 501 and FRBP 3001(b).

### 1. The Bankruptcy Court erred by finding that Appellants are not "authorized agents."

The Bankruptcy Court simply misapplied, ignored, or misapprehended the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. The Bankruptcy Court cited *American Reserve*, 840 F.2d at 488, ("[T]he right to file a proof of claim on behalf of a class seems secure, at least if the bankruptcy judge elects to incorporate Rule

23 via Rule 7023 via Rule 9014. Ex. 25, pg. 7. Despite this language and the detailed

analysis of the legislative history and statutory construction of the Bankruptcy Code and

FRBP, the Bankruptcy Court determined that Appellants were not "authorized agents."

Ex. 25, Memorandum Opinion, pg. 8.

> The Bankruptcy Court wrote:
>
> Generally, a proof of claim cannot be filed by anyone other than the creditor, an authorized representative of that creditor, or an indenture trustee. *See* 11 U.S.C. § 501(a)("A creditor or an indenture trustee may file a proof of claim."); Fed.R. Bankr. P. 3001(b)("A proof of claim shall be executed by the creditor or the creditor's authorized agent except as provided in Rule 3004 and 3004.")
> . . .
> In these cases, there no express authorization by the Unnamed Claimants and the classes have never been certified. Class Counsel was not appointed by any court to serve as class counsel under Civil Procedure rule 23(g)(1) and therefore was not authorized to file the Class Claims on behalf of the Unnamed Claimants as their authorized representative.

*Id.* at 8-9.

The Bankruptcy Court erred in the same way as the lower court did in *American*

*Reserve*. As here, in *American Reserve*, no class had been certified prior to filing of the

class proof of claim, yet this mattered not in determining whether a putative class

representative was an "authorized agent" of unnamed creditor. As the Court in *American*

*Reserve* made clear, "Section 501 does not interfere with filing by an agent. The

representative in a class action is an agent for the missing." *American Reserve*, 840 F.2d

at 493. Accordingly, the Bankruptcy Court's legal determination that Appellants were not

authorized to file class proofs of claim in the first instance constituted error.

### 2. The cases cited by the Bankruptcy Court on this issue are inapposite.

In support of its erroneous conclusion, the Bankruptcy Court cited to *In Re North*

*Bay General Hospital, Inc.*, 404 B.R. 443, 458 (Bankr. S.D. Tex. 2009) and *In Re Manville Forest Products Corp.* 89 B.R. 358 (Bankr. S.D.N.Y 1988). Neither case involved a putative class representative filing a class proof of claim on behalf of similarly situated individuals.

In *North Bay General Hospital* the precise issue addressed in the opinion was whether an individual may represent a distinct group of unsecured creditors in a Chapter 11 case simply by virtue of his appointment as an "unsecured creditor agent" in a confirmed bankruptcy plan in a prior case. *North Bay General Hospital*, 404 B.R. at 448. The bankruptcy court denied the unsecured creditor agent's Motion to Confirm Authority due, in part, to the "tenuousness" of his agency and because for nearly one hundred days after he filed the proof of claim, he neglected to disclose the creditors he purported to represent, the amount of their respective claims, and the extent to which he is allegedly authorized to represent them. *Id.* at 466-467.

In *Manville Forest Products Corp*, the lessee of oil and gas rights failed to establish that corporate lessor's employee had express authority in writing to enter into exploration agreement and letter granting lessee rights in about 3,360 acres, as required to bind a corporation with respect to immovable property under Louisiana law; evidence indicated that employee's express grant of authority, publicly recorded, was limited to contracts, agreements or other instruments affecting no more than 1,000 acres. *Manville Forest Products Corp.* 89 B.R. at 364.

As the Court can surely see, neither case speaks to the authority of a class representative to file a class proof of claim on behalf of the class s/he purports to represent as framed by the pleadings. The case most analogous to the present situation is

*American Reserve*, which deems putative class representative authorized agents to file

proofs of claim on behalf of similarly situated employees.

### 3. Appellants' Unfair Competition Law claims deputize them to serve as representatives of the general public.

Under Business and Professions Code section 17200 an action may be brought by

any "person, corporation or association or by any person acting for the interests of itself,

its members or the general public." *Saunders v. Superior Court*, 27 Cal.App.4th 832, 839

(Cal.App. 2 Dist.,1994) quoting Business and Professions Code § 17204.  Moreover, a

court may order restitution to persons from whom money or property has been unfairly or

unlawfully obtained **without certifying a class**.   *Cortez v. Purolator Air Filtration*

*Products Co.*, 23 Cal.4th 163, 172.  "Thus, if wages are property subject to a UCL

restitutionary order, the court may order payment to the employees of any overtime pay

they did not receive during the applicable time period. *Id*.

Each of the four Appellants' class action complaints contains allegations that

Appellees engaged in unfair business practices in violation of the Business & Professions

Code § 17200 et seq.  Pursuant to these allegations Appellants seek restitution on their

own behalf and on behalf of all similarly situated individuals.  This is a critical fact

because it statutorily empowers Appellants' Gentry, Card, Skaf and Hernandez to seek

class-wide relief without ever obtaining class certification.  Even if this Court was of the

belief that *American Reserve* was wrongly decided, such that a class representative has no

authority to file a proof of claim on behalf of similarly situated individuals, then here, the

Court must find that as agents for the general public, Appellants are entitled to seek

restitution for Defendants' allegedly unlawful business practices per California's unique

B&P 17200 statute.  As agents statutorily authorized to prosecute Unfair Competition

Law claims, Appellants have authority to seek disgorgement from Appellees and this authorization does not disappear simply because a company files for bankruptcy.

**B.      Appellants Timely Brought Their 7023 Motion Following Appellees' Supplement to Objections Nineteen and Thirty-one.**

"The Bankruptcy Rules impose no time requirement with respect to filing a motion for application of Bankruptcy Rule 7023; indeed, the Code contains no other instance where a claimant must perfect a claim prior to objection." *In Re Charter Co.* 876 F.2d 866, 874 (C.A. 11 (Fla), 1989). Yet, in this case, the Bankruptcy Court found that Appellants were required to seek permission to file class claims, in the first instance, before the expiration of the bar date for the Class Claims to be failed timely. See Ex. 25, pg. 10. This constitutes error. The Bankruptcy Court is effectively re-writing the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure. There is no specific time required for filing a 7023 Motion. In fact, it is improper to request that Rule 7023 be made applicable to a class proof of claim prior to receiving an objection to the proof of claim.

> The filing of a proof of claim and the Appellees' objection thereto do not constitute an adversary proceeding, and therefore this avenue for invoking Rule 23 was not available to the appellants. However, when an objection is made to a filed proof of claim, a contested matter arises. *See* Bankruptcy Rule 3007, Advisory Committee Note; Bankruptcy Rule 9014, Advisory Committee Note. Therefore, absent an adversary proceeding, the first opportunity a claimant has to move under Bankruptcy Rule 9014, to request application of Bankruptcy Rule 7023, occurs when an objection is made to a proof of claim. Prior to that time, invocation of Rule 23 procedures would not be ripe, because there is neither an adversary proceeding nor a contested matter.

*In re Charter Co,*. at 874.

In *Charter Co.*, plaintiff filed a putative securities class action a month prior to the Charter Co.'s bankruptcy petition. *Id.* at 867. The class action was stayed pursuant to the

automatic stay provision of the Bankruptcy Code. *Id.* The bankruptcy court entered an order requiring that potential claimants file a proof of claim by November 19, 1984. On September 14, 1984, prior to the bar date, the named representatives in the securities class action filed a proof of claim in the bankruptcy case. The proof of claim, entitled Proof of Claim on Behalf of Class of Claimants, purported to establish claims on behalf of the named plaintiffs and all those who purchased Charter securities during the specified period. *Id.*

After almost two years of reorganization negotiations, and well after the bar date, Charter objected to the proof of claim. *Id.* at 868. In response, the claimants filed a Bankruptcy Rule 9014 motion for application of Bankruptcy Rule 7023. *Id.* The bankruptcy court denied the motion and disallowed the "class" proof of claim on the grounds that the claimants did not comply with the requirements for bankruptcy class certification in a timely manner. *Id.* The district court affirmed the bankruptcy court on both grounds. Class claimants appealed.

As here, on appeal, the issue before the Eleventh Circuit was whether the particular claim filed by the appellants complied with the procedural requirements of the Bankruptcy Rules. *Id.* The court answered affirmatively and reversed. Once filed, a proof of claim is "entitled to a presumption that it was 'deemed allowed,' until objected to." *Id.* at 874, quoting 11 U.S.C. § 502(a). In *Charter*, no objection was made to the class proof of claim for almost two years; once objection was made, the appellants promptly moved under Bankruptcy Rule 9014 to invoke 7023. Thus, the court concluded that there was no undue delay and the class proof of claim was permissible. *Id.*

1.   **Appellants promptly moved the Bankruptcy Court to apply Rule 7023 to their class proofs of claim after receiving Appellees' Supplement to Objections.**

Similar to *In Re Charter Co.*, Appellants herein moved the bankruptcy promptly after receiving Appellees' Supplement to Omnibus Objections Nineteen and Thirty-one. As illustrated earlier, Appellants filed class action complaints in California, but Appellees have not answered any of the allegations in any of the complaints. No discovery was conducted in state court because Appellees continued to attempt to foist a ban on class actions through numerous appeals that were rejected by the California courts. While Appellees' further round of repetitive appeals was pending, Appellees filed for bankruptcy, and Appellants timely filed class proofs of claim in January, 2009, prior to the bar date.

Appellees did not object to the proofs of claim on the grounds that they were filed on behalf of similarly situated people until over one year later. See Ex. 6 and 13. Appellees simultaneously filed Motions for Summary Judgment. See Ex. 7 and 14.[5] In response, Appellants' promptly responded to the objections and requested that the Bankruptcy Court permit Appellants to conduct discovery pursuant to FRCP Rule 56 because Appellants had not been permitted to conduct any discovery prior to receiving the motions and supplement to objections. At the March 25, 2010 hearing on the matter, the Bankruptcy Court granted Appellees' motion for summary judgment, which effectively reclassified the proofs of claim to general, unsecured claims, but the Court also granted Appellants leave to bring their 7023 motion. See Ex. 17, pg. 88:18-89:10.

---

[5]      Appellants realize that Appellees made other perfunctory objections to their class proofs of claim, each of which Appellants responded to. No orders were entered on these perfunctory omnibus objections because Appellants filed responses thereto and the objections were always adjourned to future dates. None of Appellees' omnibus objections ever put Appellants on notice that Appellees disputed the class proofs of claim on the grounds that they were filed on behalf of unnamed claimants.

Appellants' motion was on file within two weeks and set for hearing for the next available omnibus hearing, i.e. April 15, 2010.

As in *Charter Co.*, clearly, there has been no undue delay on the part of Appellants. Appellants have responded to every omnibus objection asserted by Appellees. As soon as Appellees objected to Appellants' class proofs of claim on the grounds that they were filed on behalf of unknown claimants, Appellants sought relief from the Bankruptcy Court, which agreed to hear Appellants' 7023 motion. If any party has been dilatory, it is Appellees for waiting over one year to object to Appellants' class proofs of claim on the grounds that they were filed as class claims. Because a proof of claim is *deemed accepted* until objected to, Appellants have not been dilatory. Accordingly, it was error for the Bankruptcy Court to reverse this presumption and hold that Claimants' motion had to be brought, in the first instance, before the expiration of the Bar Date for the Class Claims to be filed timely.

2. **No authority supports the Bankruptcy Court's proposition that Appellants' motion had to be brought before the Bar Date.**

As noted above, the Bankruptcy Court's Memorandum Opinion states, "the Named Claimants' Motion had to be brought, in the first instance, before the expiration of the Bar Date for the Class Claims to be timely filed. Ex. 25, pg. 10. Not surprisingly, the Bankruptcy Court cites no authority for this mistaken proposition that conflicts with holdings by other circuits. The Seventh Circuit in *American Reserve Corp.* 840 F.2d 487 (C.A.7 (Ill.)1988); the Sixth Circuit in *Reid v. White Motor Corp.*, 886 F.2d 1462 (C.A. 6 (Ohio) 1989); and the Eleventh Circuit in *In Re Charter Co.*, 876 F.2d 866 C.A. 11 (Fla), 1989, each rejects the notion adopted by this Bankruptcy Court and demonstrates that one must merely file a class proof of claim before the bar date.

Moreover, Appellees failed to object to the class proofs of claim on the grounds that they were filed as class claims until after the bar date. Thus, Appellants who had not been put on notice that Appellees disputed the class proofs of claim were caught in the proverbial "catch-22." With the Bankruptcy Court's ruling, the Court effectively nixed Appellants class proofs of claim by allowing Appellees to wait until after the bar date to object to them. This is a judicially created "mugging" for the unwary that tilts the scales of equity drastically in debtors' favor in the Eastern District of Virginia while abjectly ignoring the rights of creditors. This reasoning could not conflict more with the spirit of the rules approving class actions in bankruptcy proceedings. For this reason, the Bankruptcy Court erred in finding that Appellants' 7023 Motion had to be brought, in the first instance, before the expiration of the Bar Date for the Class Claims to be filed timely.

C.      **The Bankruptcy Court Erred in Finding that these Cases were not Suitable for Certification Without Holding an Evidentiary Hearing.**

In *In Re Computer Learning Centers, Inc.*, 344 B.R. 79 (Bankr. E.D. Va., 2006), the Bankruptcy Court for the Eastern District of Virginia explained the factors to be considered in resolving a 7023 motion. It stated:

> *In re American Reserve Corp., supra,* and *In re Craft, supra,* set out some factors to be considered in resolving a Rule 7023 motion. Several are similar to class certification factors, principally the three additional factors a court must consider in certifying a class under Rule 23(b). They are:
>
> (1) the prosecution of separate actions by or against individual members of the class would create a risk of (A) inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for the party opposing the class, or (B) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests; or (2) the party opposing the class has

acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole; or (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

*Id.* at 91. By following the example set by the Seventh Circuit in *American Reserve*, this district has adopted these factors for analyzing a Rule 7023 motion, thus it follows that a party seeking 7023 relief must put forth evidence to make the requisite showing that it meets the requisite factors.

Recognizing the existence of these factors (and the fact intensive nature of the inquires), upon receipt of Appellees' Motions for Summary Judgment and Supplement to Objections Nineteen and Thirty-one, Appellants immediately responded by filing a Rule 56 request for discovery. Ex. 15, Application for Rule 56(f) Continuance. Appellants petitioned the court for permission to conduct limited discovery pertaining to class certification to allow Appellants to oppose Appellees' motions for summary judgment and to make the requisite showing for Rule 7023 relief. Appellants specifically explained to the Court that pursuant to *In Re Computer Learning Centers*, the court must analyze whether class certification is appropriate under Rule 23. Ex. 17, pg. 88:18-89:10. Appellants further explained that they had not been given the opportunity to conduct any discovery thus far, and could not possibly make the evidentiary showing required to meet

their burden under the factors adopted by the Bankruptcy Court.  Appellants' counsel

stated:

> Okay. Well, does Your Honor deny that the Rule 7023 motion is an
> evidentiary motion? I mean, we don't have -- we would never make a
> motion under 7023 without the evidence, and we won't make a motion
> now without the evidence. We'd just simply -- how would we make the
> motion?

*Id.* at 88: 3-7.  Answering Appellants' concerns, the Bankruptcy Court confirmed that

Appellants "don't have to put on evidence, or prove any of that at that point in time." *Id.*

at 88:25-89:1.

### 1.    Ignoring its own instructions, the Bankruptcy Court then made factual findings that are not supported by the Record.

Federal Rule of Civil Procedure Rule 52(a) requires that when a court's make

findings of fact they must be supported by evidence in the record.  Where findings of fact

are not supported by the record, they may be set aside as "clearly erroneous." *California

Offset Printers, Inc. v. Hampton Intern. Communications, Inc.*, 95 F.2d 1156 (C.A.9

(Cal.) 1996). Relying on the representations made by the Court made at Appellants' Rule

56 motion Appellants immediately brought their motion to apply Rule 7023 to their class

proofs of claim – and did so without having the opportunity to conduct discovery and

without submitting evidence since the Bankruptcy Court made clear it was NOT an

evidentiary hearing. As it was not an evidentiary hearing, Appellants argued that they

*alleged* common questions of law and fact that were applicable to the class; that common

questions of law fact predominated over questions affecting individual class members;

and the case otherwise met all the requirements for class treatment under well established

class action precedent. Ex. 15, pgs. 11-16.

Yet, without having heard any evidence, the Bankruptcy Court rejected Appellants' arguments and then inexplicably proceeded to make numerous factual findings *all in an attempt to "backfill" the Bankruptcy Court's erroneous conclusion that* the Bankruptcy Claims existing processes for handling creditor claims is superior to the class action processes. Ex. 25, pg. 11. The Bankruptcy Court likely found itself on the horns of a dilemma – realizing that it had duped Appellants into believing the matter was not an evidentiary hearing, yet understanding that some factual conclusion were required to reach the pre-ordained result. Thus, rather than make specific findings supported by evidence, the Bankruptcy Court merely regurgitated commentary from *In Re Computer Learning Centers* and other bankruptcy courts rejecting class proofs of claims. .If allowed to stand, the obvious conclusion is that no class action will ever stand the chance of being litigated in this bankruptcy court.

For example, the Bankruptcy Court Memorandum Opinion states, "it is highly doubtful that an additional several hundred claims from potential class members would negatively impact the claims resolution process in these cases." Ex. 25, pg. 12. Additionally, the Bankruptcy Court's Memo states, "allowing the Class Claims to go forward would unduly complicate and delay the administration of these cases and would be more costly than beneficial." And, the Bankruptcy Court stated, "going forward with the Class Action Lawsuits would involve expensive, time-consuming, protracted litigation that could delay and lessen the distribution of the Appellees' assets to the Appellants. *Id.* These purely factual findings, however, are not based on any evidence whatsoever. Instead of citing to the record, the Bankruptcy Court merely cites to *In Re Ephedra Prods. Liab. Litig.*, 329 B.R. 1, 5 (S.D.N.Y 2005) for the proposition that "a

court has discretion under Rule 9014 to find that the likely total benefit to the class members would not justify the cost to the state of defending a class action under Rule 23."

Appellants do not deny that a bankruptcy court has discretion to weigh the costs and benefits of class certification versus bankruptcy, but the court must do so rationally, i.e. a based on the evidence (see FRCP Rule 52(a)). Here, the Bankruptcy Court made no attempt to articulate its reasoning as to the specific class claims at issue herein; rather, it merely regurgitated case law rejecting class claims in bankruptcy proceedings. This constituted error. By ruling on Appellants' motion without conducting an evidentiary hearing, the Bankruptcy Court could not – and did not – conduct the proper analysis of the Rule 23 factors, and any factual findings should be reversed for reconsideration based on evidence..

**D.    The Notice Procedure Used to Inform Putative Class Members did not Comport with Due Process or Rule 23.**

In order to satisfy the requirements of due process, notice must be reasonably calculated to apprise interested persons of the pending action. *See Mullane v. Central Hanover Bank & Trust Co.* 339 U.S. 306, 314 (1950). A claim asserted by a creditor against a debtor's estate cannot constitutionally be discharged in accordance with the Bankruptcy Code unless the debtor provides constitutionally adequate notice to the creditors of the debtor's bankruptcy proceeding, as well as the applicable filing deadlines and hearing dates. *In re J.A. Jones, Inc.* 492 F.3d 242, 249 (C.A.4 (N.C.), 2007).

The type of notice that is reasonable or adequate for purposes of satisfying the due process requirement depends on whether a particular creditor is known or unknown to the debtor. *Id.* To achieve a constitutionally permissible discharge of a *known* creditor's

claim against a debtor, actual notice of the bankruptcy filing and applicable bar date is required. *Id.* Where a creditor is *unknown* to the debtor, constructive notice -- typically in the form of publication -- is generally sufficient to satisfy due process. *Id.*

Appellees' "Notice Program" in these two cases contained two parts. Appellees mailed a generic and incomprehensibly confusing notice of the Bar Date on the Named Claimants and on any persons that were employed by the Appellees within the three year period prior to the petition date. See Ex. 21, See also, Ex. 24, April 15, 2010 Hearing Transcript, pg. 15-16. For "unknown" creditors, Appellees published notice of the Bar Date in the Richmond Times-Dispatch and the Wall Street Journal. See Exs. 22 and 23. At no time did Appellees provide putative class claimants with Rule 23 Notice, i.e. "a neutral notice which concisely and clearly states in plain, easily understood language specific information about the nature and terms of a class action and how it might affect potential class members' rights." *See Federal Judicial Center*, Illustrative Forms of Class Action Notices, www.fjc.gov/, Class Action Notices Page. [6]

The Bankruptcy Court's finding that the notice program was sufficient to provide due process constitutes error for two reasons. First, <u>Appellees never provided the class claimants with notice pursuant to Rule 23</u>, despite the fact that numerous courts have approved particular Rule 23 notice in bankruptcy cases due to the shortfalls of the typical Bar Date bankruptcy notice. Second, the Court erred by finding that the many of the putative class members were not entitled to any notice at all because they are "unkown

---

[6] The Federal Judicial Center is the research and education agency of the federal judicial system. It was established by Congress in 1967 (28 U.S.C. §§ 620-629), on the recommendation of the Judicial Conference of the United States. The many specific statutory duties of the Center and its Board fall into a few broad categories: 1) conducting and promoting orientation and continuing education and training for federal judges, court employees, and others; 2) developing recommendations about the operation and study of the federal courts; 3) conducting and promoting research on federal judicial procedures, court operations, and history. http://www.fjc.gov/public/home.nsf

creditors" – even though these claims on behalf of the various classes were litigated for years before the bankruptcy petition was even filed! It is frankly astonishing how one could conclude that the putative class member claims were "unknown."

> 1. **The putative class claimants herein are entitled to Rule 23 Notice – and the generic bankruptcy notice is not superior to Rule 23 Notice.**

Federal Rule of Civil Procedure Rule 23(c)(2)(B) mandates that class action notices "must concisely and clearly state in plain, easily understood language" specific information about the nature and terms of a class action and how it might affect potential class members' rights. *See Federal Judicial Center*, Illustrative Forms of Class Action Notices, www.fjc.gov/, Class Action Notices Page. Moreover:

> Where the class members were numerous and widely dispersed, due process and Rule 23(c)(2) required that the notice describe adequately the substantive claims and also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action. The Standard then is that the notice required by subdivision (c)(2) must contain information that a reasonable person would consider to be material in making an informed, intelligent decision of whether to opt out or remain a member of the class and be bound by the final judgment.

Newberg on Class Actions, Ch. 8, § 31, Content of Rule 23(c)(2) Notice, pg. 251, n. 1 (quoting *In re Nissan Motor Corp. Antitrust Litigation*, 552 F.2d 1088, 1104-1105 (5th Cir. 1977)).

> a. **The Bankruptcy Court denied putative class members due process.**

Incredibly, and without citation to any authority, the Bankruptcy Court declared, "neither due process nor the Bankruptcy Rule require the debtors to specifically inform parties of the existence or nature of their potential claims. Ex. 25, pg. 16. Yet, many courts, including the very court from which Appellants have taken this appeal (i.e. the

Bankruptcy Court for the Eastern District of Virginia), recognize the right of putative

class members to receive Rule 23 notice in bankruptcy proceedings. Specifically, in *In*

*Re Computer Learning Centers*, the court stated:

> The class proponents raise one additional argument, that many class members may not have realized that they had claims and may not have filed claims in this case. The advantage of a class action is that the class members can be particularly identified and be given notice of their potential claims. In a bankruptcy case, notice is only mailed to known creditors. While on the surface there appears to be merit to this argument, any notice that can be given in a class action case can also be given in a bankruptcy case. If potential class members can be identified in a class action, they can surely be as easily identified in a bankruptcy case. Here, for example, the trustee obtained all of the debtors' records and could have examined them to find potential class members. Individual notice could have been given to them. The notice might also have been specially drafted to alert them to their potential claims. Additional notice might have been given by publication. In short, any notice that could have been given in a class action could have been given in this case. Thus, the class action in this case is not superior to this bankruptcy case for the fair and efficient adjudication of the controversy.

*Computer Learning*, 344 B.R. at 93.

This quote from *Learning Centers* is significant for two reasons. On the one

hand, it confirms that bankruptcy courts recognize the right and importance of class

members to receive Rule 23 notice in bankruptcy proceedings, but it also acknowledges

the reasonable feasibility of providing Rule 23 notice to specific putative class members

and how that makes the bankruptcy court an appropriate forum for litigating class action

claims in bankruptcy. To be sure, it in no way supports a conclusion that a generic

bankruptcy bar date notice is sufficient, or that putative class members can be relegated

to the infirm status of "unknown" such that publication notice is sufficient.

In *Computer Learning*, the court highlights the feasibility of providing Rule 23

notice within the process of the bankruptcy proceedings. To wit, a bankruptcy court can

comply with the Rule 23 notice requirements just like any other federal trial court could. Thus, putative class members need not worry that the court will violate their due process rights. Here, however, the Bankruptcy Court rejected the right of putative class members to receive any semblance of a Rule 23 notice, substituted a published generic bankruptcy bar date notice in place of a Rule 23 "type" notice *and yet still found that claims administration in bankruptcy is superior to a class action.* The Court's conclusion conflates the holding in *Computer Learning* and violates due process.

> **b.      The Bankruptcy Court effectively transformed these "opt-out" class actions into "opt-in" class actions.**

In addition, the Bankruptcy Court's finding that bankruptcy claims resolution is superior to a class action and that putative class members are not entitled to Rule 23 notice impermissibly transformed these four respective "opt-out" class actions into "opt-in" class actions. By denying class members the right to Rule 23 notice, the Bankruptcy Court eliminated the right of putative class members to be informed of the nature of allegations, to enter an appearance through counsel, and to opt-out of the actions, all of which are required when, as here, you have a Rule 23(b)(3) class action.

Instead, the Bankruptcy Court's Order required individual class members to come forward and file individual proofs of claim in these proceedings. See Ex. 26, pg. 2. While this is problematic in and of itself simply because it violates the mandates of Rule 23, it is abhorrent because the Court eviscerated the rights of putative class members without ever providing adequate notice to putative class members. Such an order stretches the bounds of credulity and reinforces the Bankruptcy Court's apparent dogma, i.e. "there will never be a class action in this bankruptcy court."

2.    **The putative class members in Appellants' putative class action complaints are known creditors.**

In addition to failing to provide Rule 23 notice, the Bankruptcy Court erred by finding that the putative class members were only entitled to publication notice because they are "unknown creditors". An "unknown creditor," *i.e.*, one who is not entitled to actual notice of the Appellees' bankruptcy filing, is a claimant whose identity or claim is wholly conjectural or 'whose interests or whereabouts could not with due diligence be ascertained' by the debtor." *In re J.A. Jones, Inc.* 492 F.3d . at 250. "Known creditors," in contrast, include claimants whose identities are actually known to the debtor, as well as claimants whose identities are "reasonably ascertainable" to the debtor. *Id.*, quoting *Tulsa Professional Collection Service, Inc. v. Pope,* 485 U.S.478, 490 (1988). The Supreme Court has made clear that a creditor is "reasonably ascertainable" if the debtor can uncover the identity of that creditor through "reasonably diligent efforts." *Mennonite Bd. of Missions v. Adams,* 462 U.S. 791, 798 n. 4, (1983).

The Bankruptcy Court Memorandum Opinion states:

> to the extent the Unnamed Claimants were not employed within the three years prior to the Petition Date and were not served with actual notice of the Bar Date, those Unnamed Claimants are unknown creditors and the publication notice was sufficient to satisfy due process.

Ex. 24, pg. 16. <u>Without any stated justification whatsoever, the Bankruptcy Court arbitrarily set the cut-off for "known creditors" and "unknown creditors" with regards to former employees at three years.</u> To be sure, this finding is convenient for Appellees as it reverse engineers approval of the dilemma created by the fact that Appellees had provided mailed notice to former employees (a fraction of the alleged classes) employed within three years of the petiton date. <u>However, Appellees did not argue—and the</u>

<u>Bankruptcy Court did not find—that a former employee who's employment terminated</u> <u>*three and one-half* years prior to the petition date could not be identified, or only had a</u> <u>claim that was wholly conjectural, or 'whose interests or whereabouts could not with due</u> <u>diligence be ascertained' by the Appellees.</u>[7] Pursuant, to the Fourth Circuit's standard for determining who is "known" versus "unknown," the Bankruptcy Court fell woefully short of establishing as a matter of fact or law that the putative unnamed claimants in these cases are "unknown."

Indeed, any such argument from the Appellees that they could not identify former employees dating back more than three years would be completely disingenuous. The same goes for any argument from Appellees that the putative class members claims are purely conjectural or that the interests or whereabouts of former employees could not be ascertained with due diligence. Appellees know <u>exactly</u> which individuals qualify as putative class members in these respective cases. The *Gentry* case, for example, has been heavily litigated and resulted in a final decision from the California Supreme Court regarding Appellees' attempt to foist a ban on class actions. *See Gentry v. Superior Court*, 42 Cal.4[th] 443 (2007). In *Gentry*, Appellees sought to enforce arbitration agreements signed by the same putative class claimants at issue here that purported to waive the class members' right to participate in class-wide arbitration. *Id.* at 450-452. During the California state court litigation, Appellees knew <u>exactly</u> which individuals were contemplated by *Gentry's* class complaint, because Appellees were trying to enforce written agreements signed by each putative class member! For Appellees to turn

---

[7] The "three and one-half years" is provided by way of example. The same argument applies for an employee whose employment terminated at any time during the statutory period covered by AppellantsAppellants' Class Action Complaints, which, in the Gentry matter, dates back to 1998.

Case 3:10-cv-00567-HEH   Document 8   Filed 08/27/10   Page 47 of 51

around and announce to the Bankruptcy Court that these former employees are "unknown" is a "dog that won't hunt."

Further, Appellees' argument that these claims are purely conjectural ignores the allegations of the class action complaints as well as fundamental principles of wage and hour law in the State of California. *See Savon Drug Stores, Inc.* v. *Superior Court*, 34 Cal.4th 319 (2004)(California Supreme Court held that common issues predominated over questions affecting individual members such that class certification was appropriate in a wage and hour lawsuit alleging that Assistant Operations Managers were misclassified as "exempt" from California's strict laws mandating the payment of overtime). The allegations in the four putative class action complaints make substantially similar allegations, i.e. that Appellees illegally denied certain groups of employees mandatory overtime wages and meal/rest periods by misclassifying them as "exempt" from the laws governing minimum working conditions. The allegations are *real*, and they are supported by *facts* alleged in the four respective operative complaints. Appellees' sophistry does not somehow render these claims "contingent and conjectural" as Appellees argued to the Bankruptcy Court. See Ex. 20, pg. 26.[8]  To be sure, that is another factual conclusion for which there is no evidence in the record at all!

> **3.    There is no evidence in the record supporting the Bankruptcy Court's conclusion that providing actual notice to unnamed claimants would have "involved significant time and expense."**

Once again, Federal Rule of Civil Procedure Rule 52(a) requires that a court's make findings of fact that are supported by evidence in the record. Where findings of fact are not supported by the record, they may be set aside as "clearly erroneous."

---

[8]    If such claims were as "contingent and conjectural" as AppelleesAppellees

40
APPELLANTS' OPENING BRIEF

*California Offset Printers*, 95 F.2d 1156. Here, the Bankruptcy Court failed to comply with Rule 52(a)'s mandate. Appellees asserted, and the Bankruptcy Court so found, that "the only way they could have provided notice to all of the Unnamed Claimants would be by identifying the specific employees who fell into the classes identified by the Class Claims or by serving all of their employees in California for the ten year period prior to the petition date." Ex. 25, pg. 15. Either method, the Bankruptcy Court found, "would have involved significant time and expense by a company already in a dire financial condition." *Id.* While these are certainly convenient proclamations for Appellees position, there is no evidence whatsoever in the record to support them. In fact, it is ridiculous to believe that Appellees had not identified this group years ago around the time the cases were in litigation back in California. There is no inkling from the record about how much time or expense may have been involved in doing this work – and the conclusion of the Court can only be charitably characterized as "too convenient."

There is absolutely no evidence in the record supporting Appellees' position that it would have required an unreasonably substantial amount of time and money to determine which employees fell into the classes identified by the class claims. Indeed, it was only first mentioned in Appellees' self-serving, conclusory remarks in response to Appellants' 7023 Motion and at the hearing on the matter. Importantly, however, Appellees' made no evidentiary showing to support this claim, yet the Bankruptcy Court simply accepted Appellees' self-serving arguments as "fact."

Obviously, Appellees represented that it would have been unreasonable to provide actual notice to the putative class because Appellees had to establish that putative class members were "unknown" claimants for publication notice to comport with due process.

It defies logic to believe that Appellees do not have succinct records identifying which of

its former employees held the job positions and/or titles set forth in the putative class

action complaints.   In fact, one would expect Appellees to have such records because

Appellees spent over 5 years litigating the *Gentry* and *Hernandez* matters in the

California Courts of Appeal regarding the enforcement of specific arbitration agreements

signed by each putative class member.   In any event, no evidence was put forth in the

form of testimonial declarations or documents, etc. to support Appellees' arguments or

the Court's findings.

Second, there is no evidence in the record about how much it would have cost to

provide notice to putative class members.   Appellees made numerous remarks in their

opposition to Appellants' motion about the drastic measure that would have been

required to provide actual notice.   For example:

> That is the case here. Prior to the Petition Date, the Appellees employed
> approximately 40,000 employees. If the Appellees had served the
> publication notice on all of their former employees going back as far as
> 1998 (the beginning of the class period for the Gentry Class Action), this
> would likely have entailed serving notice on tens of thousands of
> additional persons. More importantly, perhaps, such service would have
> been costly and could only have been targeted to the Unnamed Claimants
> through the Appellees' undertaking of extraordinary steps, which steps are
> simply not required by due process. In particular, the Appellees' employee
> records prior to 2005 are not readily accessible. Even assuming that the
> Appellees could have obtained all of the employee records dating back to
> 1998, to give actual notice to the Unnamed Claimants who might be part
> of the classes the Named Claimants seek to represent, the Appellees would
> have had to review the employee records to determine each employee's
> employment location, payroll and benefit history and whether they might
> hold a claim. Plainly, under the circumstances, such efforts and their
> associated costs were not reasonable and, thus, were unnecessary to satisfy
> due process. Alternatively, the Appellees could have simply identified all
> persons that were employed by the Appellees in or after 1998 and
> provided them each with actual notice. Such notice, however, would have
> been extremely costly and in many instances futile given the likelihood
> that many of the employees had likely moved from the addresses in their

employment records. In summary, to provide actual notice to the Unnamed Claimants, the Appellees would have been faced with a choice between taking extraordinary measures to identify the Unnamed Claimants or incurring the significant additional costs of serving all former employees for a decade prior to the Petition Date when under severe financial constraints.

Ex. 20, pg. 30-31. Appellees' remarks were not supported by any factual record whatsoever, yet the Bankruptcy Court relied on them to conclude that it was "unreasonable" for Appellees to provide actual notice to putative class members.[9]

Finally, Appellees remarks are sheer hyperbole. Appellants have never represented that there are 40,000 putative class members and that lofty number was apparently picked out of thin air by Appellee for purposes of dramatic effect. The class claims are limited in scope to employees in specific positions in Appellees' retail stores in California during specific time periods (with *Gentry* being the only case dating back as far as 1998). See *Gentry* Complaint, Ex. 1. Assuming *arguendo* that Appellees were able to identify the putative class members in Appellants' respective complaints (which Appellees should be able to quite easily), it would likely require minimal time and money to provide these individuals with actual notice explaining their rights pursuant to Rule 23. In fact, it is customary in Rule 23 class proceedings for the class representative to shoulder the cost of notice – a process which would cost Appellees nothing. For these reasons, the Bankruptcy Court erred in denying the putative class claimants of the right to Rule 23 notice, thus violating their due process rights.

---

[9] It is frustrating that the Bankruptcy Court determined that providing actual notice to potential class members would have been unduly expensive and unreasonable "for a company in dire financial condition" when the Court also found that resolving an additional several hundred claims would not affect the claims resolution process. The concepts are contradictory. If the Bankruptcy Court and Appellees are capable of litigating several hundred additional claims, then certainly it is not too much to ask to provide actual notice to those individuals who have claims to assert in the bankruptcy proceedings.

## VI.   RELIEF SOUGHT

Appellants respectfully request an order from this Court reversing the Bankruptcy Court's Memorandum Opinion and Order denying Appellants' Motion to Apply Rule 7023 to their class proofs of claim. Specifically, Creditors request an order reversing the Bankruptcy Court's decision that 1) Creditors' were not authorized to file proofs of claim on behalf of unnamed creditors; 2) their motion was not timely; 3) bankruptcy claim resolution is superior to a class action as a matter of law; and 4) the generic bankruptcy bar date notice was sufficient to satisfy the putative class members' due process rights under Rule 23. Appellants finally request that their class proofs of claim be allowed to proceed in bankruptcy court and that Appellants be allowed to pursue discovery to prepare these matters for class certification.

Respectfully Submitted,

**RIGHETTI GLUGOSKI, P.C.**

Date:  August 27, 2010

/s/ Michael Righetti
Attorneys for Appellants


/s/Jason M. Krumbein, Esq.
VSB#43538
Krumbein Consumer Legal Services
Local Counsel for Genty, et al
1650 Willow Lawn Drive
Suite 300
Richmond, VA 23230
804.673.4358
804.673.4350 fax
jkrumbein@krumbeinlaw.com